The **STATE** of Ohio, Appellee,

**v.**

**PROKOS, Appellant.**

[Cite as *State v. Prokos* (1993), 91 Ohio App.3d 39.]

Court of Appeals of Ohio,
Hocking County.

No. 92 CA 18.

Decided Oct. 15, 1993.

*Jeffrey F. Bender,* Hocking County Assistant Prosecuting Attorney, for appellee.

*Richard M. Wallar,* for appellant.

---

GREY, Judge.

This is an appeal from the Hocking County Municipal Court. After a trial to a jury, Nick Prokos was found guilty of violating R.C. 4511.21(D)(1), speeding. We reverse and remand.

Tamara Heft is a college student who commutes from her home in Lancaster to Hocking College in Nelsonville. On the morning of February 26, 1992, she was returning home on Route 33. She was in a line of cars and noticed a white limousine in the line behind her. She testified that as they were rounding a curve the limousine pulled out, passed several of the cars and, because of oncoming traffic, was forced to pull in between her and the car in front of her. She testified that she slammed on her brakes and ran off the right side of the road to avoid hitting the rear of the limousine. She said the limousine then passed the lead car, increased its speed and drove wildly from side to side. She testified that she was traveling between fifty-five and sixty miles per hour and that the limousine soon disappeared from sight.

Shortly thereafter she saw Trooper Mender, who was parked by the side of the road finishing the paperwork on a prior citation. She stopped and told Mender that the limousine had run her off the road, that it was speeding and that it was driving very erratically. She gave the trooper the license number of the vehicle.

Mender activated his pursuit lights, headed up Route 33 and caught sight of the limousine about four minutes later. He paced the car for approximately three seconds and determined that it was going seventy miles per hour. He pulled it over and, when Heft came along, flagged her over also. She identified the car, the driver and the license plate number. Mender issued a citation for exceeding the fifty-five-mile-per-hour speed limit.

The cause came on for trial to a jury and Prokos was found guilty as charged. In addition, the court found his actions consistent with reckless driving. The court fined Prokos $250, sentenced him to thirty days in jail and suspended his operator's license for one year. Prokos timely filed a notice of appeal and assigns the following errors.

First Assignment of Error:

"The trial court erred in permitting the state to adduce evidence of other wrongs and alleged crimes of the defendant when the defendant was not charged with other wrongs and alleged crimes."

In his first assignment of error, Prokos challenges the court's admission of Heft's testimony to the extent it shows other bad acts.

Admission or exclusion of evidence rests within the sound discretion of the trial court and its decision to admit or exclude such evidence or testimony cannot be reversed absent a showing of an abuse of discretion. *State v. Combs* (1991), 62 Ohio St.3d 278, 284, 581 N.E.2d 1071, 1077; *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343.

"The term 'abuse of discretion' ' * * * connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *State v. Montgomery* (1991), 61 Ohio St.3d 410, 413, 575 N.E.2d 167, 170, citing *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 173, 404 N.E.2d 144, 149. See, also, *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126, 482 N.E.2d 1248, 1251–1252.

Evid.R. 404(B) states:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

In *Kent v. Kirkland* (Apr. 14, 1989), Portage App. No. 1941, unreported, 1989 WL 36277, the court noted the similarity between Evid.R. 404(B) and R.C. 2945.59 and stated:

"Similarly, R.C. 2945.59, proof of defendant's motive, states:

" 'In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.'

"In interpreting the latter, the Supreme Court has held that the statute must be strictly construed against the state. *State v. Burson* (1974), 38 Ohio St.2d 157 [67 O.O.2d 174, 311 N.E.2d 526]. Accordingly, evidence of crimes or other acts is admissible only when it is relevant to one of the matters listed in the statute, such as motive or intent. *State v. Thompson* (1981), 66 Ohio St.2d 496 [20 O.O.3d 411, 422 N.E.2d 855].

"The Staff Note to Evid.R. 404(B) states that the list in the rule is not exclusive. Some courts have interpreted this language to mean that this type of evidence is admissible 'if it is relevant under Evid.R. 401 and not excluded under Evid.R. 403.' *State v. Wilson* (1982), 8 Ohio App.3d 216, 219 [8 OBR 288, 290–291, 456 N.E.2d 1287, 1291]. In *State v. DeMarco* (1987), 31 Ohio St.3d 191 [31 OBR 390, 509 N.E.2d 1256], though, the court held that the same analysis that applied to the statute also applied to the rule."

The principle underlying Evid.R. 404(B) is that evidence of other acts is simply so prejudicial that to allow it in outweighs its value as relevant evidence.

The state argues that Heft's testimony was necessary to explain why Trooper Mender had to exceed a speed of 100 miles per hour in order to catch Prokos and for the purpose of identification. We are unconvinced.

■ To establish the essential elements of speeding the state is not required to show why a police officer is clocking a vehicle. To make out a prima facie case of speeding the state need only prove that the defendant was operating a vehicle in excess of the posted speed limit. Here, there is no problem with identification. Heft's testimony regarding Prokos's driving pattern does nothing to make the existence of the allegation of speeding more or less likely. Her testimony is, however, likely to bias a jury. As such, the potential for prejudice far outweighs the probative value of the testimony. Prokos' first assignment of error is well taken and is sustained.

Third Assignment of Error

"The evidence failed to support the trial court's finding the defendant guilty of reckless operation of a motor vehicle."

■ Prokos's third assignment of error is an expansion of his first. He challenges the court's decision that his speeding was consistent with reckless operation.

We begin by noting that, although the court held Prokos's actions were consistent with reckless operation, he was not convicted of reckless operation. Based on our findings regarding his first assignment of error, we find Prokos's third assignment of error well taken and it is, therefore, sustained.

Second Assignment of Error

"The defendant was denied due process and a fair trial when the trial judge conducted direct and cross-examination of the defendant and thus abandoned his role as a fair and impartial magistrate of the trial proceedings."

■ During the trial, the judge asked several questions of the witnesses. Prokos challenges the judge's participation and argues that, during the participation, the judge abandoned his role as an impartial magistrate.

■ Under Evid.R. 611, the court has discretion to control the flow of the trial. This control includes asking questions of the participants and the witnesses in a search for truth. Evid.R. 614. Since a trial court's powers pursuant to Evid.R. 611 and 614 are within its discretion, a court reviewing a trial court's interrogation of witnesses and comments must determine whether the trial court abused that discretion. *State v. Davis* (1992), 79 Ohio App.3d 450, 607 N.E.2d 543.

■ In a trial before a jury, the court's participation must be limited, lest the court, consciously or unconsciously, indicates its opinion on the credibility of a witness. Where a jury might infer the court's opinion of a witness through the persistence, tenor, range, or intensity of its questions, the interrogation is prejudicially erroneous. *State ex rel. Wise v. Chand* (1970), 21 Ohio St.2d 113, 50 O.O.2d 322, 256 N.E.2d 613, paragraphs three and four of the syllabus. While the court can ask neutrally phrased questions, its questions should not suggest disbelief in a witness's testimony. Cf. *State v. Kay* (1967), 12 Ohio App.2d 38, 41 O.O.2d 91, 230 N.E.2d 652; *State v. Johnson* (Sept. 16, 1976), Cuyahoga App. No. 34741, unreported.

The record shows that when Prokos was on the stand the state asked nineteen questions. The court intervened and asked thirty-three questions over objections of defense counsel. The state asked another four questions and the court followed with seven more questions.

During the cross-examination of Prokos, the court asked the following:

"Court: So you can't tell when you're about to pass a car, when you pull out into the other lane if there's another car in front of the van. You couldn't tell that?

"A. Not at that time, no.

"Court: Why not? Why couldn't you tell that?

"A. I just misjudged it. I'm sure you have done it before. Everyone here has done it before.

"Court: Well, the question is, why couldn't you determine that?

"A. Because the van was blocking. It was like an old beat up—

"Court: When you pulled into the far lane, are you telling the jury that you can't see what's in front of the van?

"A. I didn't see what was in front of the van until—

"Court: Answer my question, please.

"Court: I'm sorry. I don't understand how it is you couldn't see a car in front of the van if you had pulled out into the other lane.

"A. Okay. I pulled out in the other lane. The van was so big and square. So even though when I pulled out next in the other lane, the nose of my car was towards the back of her car. We're like this. This is the back of her car. Once the van—I'm right here. I did not see the car in front of her. I pull out here, I still don't see the car until I got to this point. When I got to this point, the roadway was clear and there was no other traffic coming. And they were doing about 40, 45. So at 55 miles an hour, there was enough speed to go around them.

"Court: Isn't it true that had you looked, that you could have seen a vehicle in front of the van—

"A. Like—

"Court: Let me finish my question. —when you pulled into the opposite lane?

"A. You're right. Like I said, when I came around the van—

"Court: So yes, you could have seen it?

"A. No, I did not.

"Court: Okay. Is that because you didn't look?

"A. It was—sure. I mean, it was just like I wasn't—I didn't—just like when you're driving you don't realize there's a car in front of it. So even when I got in the left lane, I didn't really assume until I started getting up next to it. And then all of a sudden, I saw the car. And then I thought there was enough room for me to get around both of them, but there was another car coming at that time.

"Court: But the point is, you didn't look when you should have looked to see whether or not—

"A. I—

"Court: Let me finish. —to see if there was anything in front of the car you were passing?"

After questioning Prokos about the length of his car, the court asked the following:

"The point being, that you didn't look and you're in an out-sized length vehicle. And you didn't apparently look until you were at least half-way up the length of the vehicle you were passing to see if you had a safe passing distance; is that correct or not?"

From the amount of questions and the tenor, we agree that the court abandoned its role as an impartial magistrate. Prokos's second assignment of error is well taken and is sustained.

Fourth Assignment of Error

"The defendant was denied due process and a fair trial when the prosecuting attorney engaged in impermissible conduct by badgering the defendant and his witness on the basis of ethnic origin."

■ Demitris Prokos, defendant's brother, who had been following the limo in another car, took the stand on Prokos's behalf. On cross-examination, the Assistant Prosecuting Attorney commented on Demitris's speech pattern, and the following occurred:

"Q. Do you always talk this fast?

"A. Yes. I'm Greek. If you want me to go farther to explain why—

"Q. No. I just asked you a question.

"A. Yes, I do. Many times people ask me to slow down so they understand me.

"Q. Where do you live?

"A. In Athens, Ohio; 5 Longview Heights. I thought I stated that.

"Q. How long have you been there?

"A. Oh, three years.

"Q. Where were you previous to that?

"A. Where was I previous to that? In a different place in Athens.

"Q. How long have you been in Athens County?

"A. All together? Since '74, 1974.

"Q. Were you born here?

"A. Yes, I work here.

"Defense Counsel: Objection, Your Honor. I think this is badgering the witness.

"State: Well, Your Honor, he's giving a distinct accent here which doesn't really—if he was born here.

"WITNESS: So.

"Defense Counsel: Your Honor, I believe this is badgering.

"Court: I don't know what it is.

"WITNESS: I'm an American citizen and that's insulting.

"State: *It goes to his credibility,* Your Honor.

"Court: Well, you may ask questions to identify that, I suppose. Go ahead. I think your perilously close to accomplishing other things, but it's your—you go right ahead." (Emphasis added.)

 We find any line of questioning which attempts to discredit a witness based on his nationality, ethnic background, color, religion, or accent repugnant to the principles of American law. Prokos's fourth assignment of error is well taken and is sustained. The judgment of the trial court is reversed. This case is remanded to the trial court for further proceedings.

*Judgment reversed*
*and cause remanded.*

STEPHENSON, J., concurs.

PETER B. ABELE, J., not participating.